**HAMER & CO. vs. LAWRENCE ET AL.**

APPEAL FROM THE COMMERCIAL COURT OF NEW ORLEANS.

Where the evidence showed that the sale from the defendant to the intervenors, was only to give the latter a colorable claim to the property (or cotton;) the sale was held to be made for the purpose of protecting it from the pursuit of creditors, and void.

So, where it appeared the defendant gave orders to the intervenors to ship his cotton in their names, it was held, that the legal possession and control over it remained in him, as owner, through the interposition of these persons *as his agents.*

This suit commenced by attachment. The plaintiffs who reside in the State of Mississippi, allege the defendants, Lawrence and Cattling, also non-residents, are justly indebted to them in the sum of $4000, with interest, and that their debtors have property within the jurisdiction of the court, which they pray may be attached; and that they have judgment for the amount of their said debt, to be satisfied from the proceeds of such property as they may find belonging to their said debtors.

An attorney to represent the absent defendants was appointed, who put the cause at issue, when Messrs. Elliott & Worley of Mississippi, intervened, claiming one hundred and eighty-one bales of the cotton, which had been attached as the property of the defendants, to belong to them.

The contest was between the plaintiffs and intervenors. There were several depositions read on the trial, taken in Mississippi, touching the ownership of the cotton. One of the most material items in the evidence adduced on the trial, is the following note from one of the defendants.

" HOLMES Co., *February,* 1840."
" Messrs. Elliott & Worley, or R. A. Moffett,

Will ship my cotton at Parker's Landing, to Ward, Moffett & Co., New Orleans, when directed by R. A. Moffett, when so to do. My cotton is marked *H.*"

" JAMES CATTLING."

There was judgment dismissing the petition of intervention, and the intervenors appealed.

*L. C. & G. B. Duncan,* for the plaintiffs and appellees.

*Chinn,* for the appellants.

*Simon, J.* delivered the opinion of the court.

Plaintiffs seek to recover a sum of four thousand dollars, to secure which they sued out a writ of attachment which was levied on one hundred and eighty-eight bales of cotton, as the property of the defendants. During the progress of the suit, a petition of intervention was filed by Elliott & Worley, residents of the State of Mississippi, in which they state themselves to be the owners of the cotton attached, having caused the same to be shipped to New Orleans, and pray that said cotton be decreed to them, &c. The plaintiffs answered said petition of intervention by pleading the general issue ; and judgment having been rendered below against the intervenors, the latter appealed.

The intervenors have attempted to establish their title to the cotton attached, as proceeding from a sale made to them by James Cattling, one of the defendants ; and have also endeavored to show a delivery of the same previous to its being shipped to New Orleans; for this purpose they have been obliged to resort to the testimony of the defendants themselves, from whose evidence it appears that through the interposition of R. A. Moffett, of the house of Ward, Moffett & Co., of New Orleans, a certain order was given by Cattling in favor of the intervenors or R. A. Moffett, to ship his cotton at Parker's Landing on the Yazoo river, to Ward, Moffett & Co., when directed by R. A. Moffett so to do. This written order was delivered in consequence of certain arrangements made between Cattling and Moffett for the purpose of satisfying an execution which had been issued against Cattling, at the suit of the firm of Ballard, Franklin & Co.; these arrangements having failed, Cattling undertook to sell his cotton to the inter-

EASTERN DIS.
June, 1841.
———————
HAMER & CO.
vs.
LAWRENCE ET
AL.
venors, on the terms and conditions mentioned in his testimony, and received from them their check at sight on the branch of the Mississippi Union Bank at Lexington, Miss., for seven thousand dollars, with the understanding that its proceeds were to be paid to the deputy marshal on the execution already mentioned. Some twenty days after the receipt of the check, Cattling, finding it would not answer his purpose, returned it to the intervenors on their agreeing to pay him for the cotton in such funds as would answer his other purposes. Cattling further says that the cotton which he sold to the intervenors was identified between them at the time of the sale, as being all the cotton which he then had at Parker's Landing; that this sale took place before the cotton was shipped: and that the shipment made on board of the steam-boat Bunker Hill, was wholly unauthorized by him, and without his knowledge at the time, &c.

On the other hand, the testimony of Capt. Powell, shows that he was applied to by a Mr. Barksdale of the firm of Jones & Barksdale; for the purpose of getting him (the witness) to take the cotton in question belonging to Cattling, and which was then at Parker's Landing. That at the time, Barksdale presented him a written order signed by James Cattling, authorizing *Elliott & Worley, or R. A. Moffett* to ship it, and that he gave up said order to Barksdale at the time when the bills of lading were signed. He further states that he was directed by Barksdale to mark all the cotton which he might find unmarked, with the letter M; that he found thirty-two bales so unmarked, and caused them to be marked with the letter M; the balance (one hundred and fifty-six bales) having been previously marked, *H.* That when he received the order to go after the cotton, he was informed by Barksdale that there might be some difficulty with some of Cattling's creditors, and that the cotton *might be attached;* that he, Barksdale, was merely acting as an agent in the matter, and did not wish him (witness) to say any thing about the cotton or to mention where it came from; that Barksdale asked him if any way could be

devised by which said cotton would not be known in New Or- <span>EASTERN DIS.</span>
leans *to prevent an attachment*, and witness suggested that all <span>*June*, 1841.</span>
he could do was to give it different marks from the real ones on <span>HAMER & CO.</span>
the manifest. Witness understood the cotton to be Cattling's, <span>*vs.*</span>
<span>LAWRENCE ET</span>
shipped as his and on his account, and did not learn that any <span>AL.</span>
advance had been made upon it, or that any other person had
any claim to it. The bill of lading was made in the name of
Jones & Barksdale, and the cotton consigned to Ward, Moffett
& Co. Other witnesses have also been examined whose testi-
mony tends to corroborate the evidence of Capt. Powell.

Under such a state of facts and circumstances, we cannot <span>Where the</span>
forbear remarking that this is another instance of a flagrant at- <span>evidence show-</span>
<span>ed that the sale</span>
tempt to screen the property of a debtor from the reach of his <span>from the defen-</span>
<span>dant to the in-</span>
creditors; every thing shows that the sale made by Cattling to <span>tervenors was</span>
<span>only to give the</span>
the intervenors, was merely to give them a colorable claim to <span>latter a colora-</span>
<span>ble claim to the</span>
the cotton, and was undoubtedly intended to protect it against <span>property (or</span>
Cattling's creditors, who might perhaps undertake to follow it <span>cotton;) the sale</span>
<span>was held to be</span>
into Louisiana. It is clear that said cotton never ceased to <span>made for the</span>
<span>purpose of pro-</span>
belong to Cattling; that the legal possession and control over <span>tecting it from</span>
it remained in him, and that far from there having been any <span>the pursuit of</span>
<span>creditors, and</span>
legal delivery thereof made to the intervenors, Cattling continu- <span>void.</span>
<span>So, where it</span>
ed to exercise upon it all his rights of owner through the inter- <span>appeared the</span>
<span>defendant gave</span>
position of persons who cannot be considered but as acting as <span>orders to the in-</span>
<span>tervenors to</span>
his agents. We can hardly believe the story of the condition- <span>ship his cotton</span>
al sale made to Moffett, and of the subsequent arrangements <span>in their names,</span>
<span>it was held, that</span>
made with the intervenors. Why was the order to ship the <span>the legal posses-</span>
<span>sion and control</span>
cotton originally given to *Elliott & Worley*, or *R. A. Moffett?* <span>over it remain-</span>
<span>ed in him, as</span>
if at that time the transaction existed solely between Cattling <span>owner, through</span>
and Moffett, and if the sale to the intervenors was only made <span>the interposition</span>
<span>of these persons</span>
subsequently, and after it had been ascertained that Moffett had <span>*as his agents.*</span>
failed to comply with his obligations? does not this circum-
stance show an anticipated intention on the part of Cattling to
obtain their collusive interposition? We think it does; and
we cannot hesitate to conclude that the claim set up by the in-
tervenors, attempted here to be sustained by the testimony of
their very vendor, who is one of the defendants, is nothing but

EASTERN Drs. *June*, 1841.

the result of a collusive understanding between them and the defendants. But however it may be, it is evident that the cotton has never been delivered to nor paid for by the intervenors, since from Cattling's testimony, it is shown that having taken a check for the price of the property, he returned it to Elliott & Worley, and thereby cancelled the sale. We are of opinion that the judgment appealed from ought not to be disturbed.

It is therefore ordered, adjudged and decreed that the judgment of the Commercial Court be affirmed with costs.